## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

**DEDE TOULAN-ZEKPA,**

**Plaintiff,**

**vs.**

**WAL-MART STORES, INC., (#3153);**

**Defendant.**

**8:17CV233**

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion for Summary Judgment, ECF No. 20, filed by Defendant Walmart Inc. (formerly Wal-Mart Stores, Inc.) ("Walmart"). For the reasons stated below, the Motion with be granted.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

Walmart is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Plaintiff, Dede Toulan-Zekpa is a citizen of Nebraska. The amount in controversy exceeds $75,000, exclusive of interest and costs. Thus, this case is

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other material upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

properly before the Court based on diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332.

On July 17, 2013, Toulan-Zekpa and her husband entered the Walmart store located at 6710 S. 167th Street in Omaha, Nebraska. Shortly after arriving, Toulan-Zekpa walked into the dairy aisle where she suddenly slipped in what the parties believe was yogurt, and she fell. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 100, 104; Compl., ECF No. 22-1, Page ID 79. Toulan-Zekpa did not see the yogurt in the aisle prior to her fall. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 105. She was wearing glasses, and a factual dispute exists as to whether her glasses may have prevented her from seeing the yogurt on the floor.[2] Toulan-Zekpa Dep., ECF No. 22-4, Page ID 104.

After Toulan-Zekpa's fall, her husband and an unknown person helped her up. Walmart associates then assisted her in cleaning her dress and they wiped the floor. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 93-94, 107-109. At her deposition, Toulan-Zekpa testified the Walmart associates were "shocked" when they arrived after her fall. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 110. Toulan-Zekpa signed a customer statement regarding the incident. Customer Statement, ECF No. 22-2, Page ID 83.

Walmart's Assistant Manager, Patty Hauck, was one of the Walmart associates who responded to the report that Toulan-Zekpa had fallen. Hauck Decl. ¶ 3, ECF No. 22-

---

[2] Toulan-Zekpa alleges she can see with or without her glasses and that she wears them because her asthma affects her eyes. Walmart infers from Toulan-Zekpa's deposition testimony that her glasses impeded her ability to see the floor. Whether Toulan-Zekpa's glasses affected her ability to see the yogurt on the floor is unclear from her deposition testimony. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 104-105; Pl.'s Br. Opp'n Mot. Summ. J., ECF No. 25, Page ID 124. However, any factual dispute regarding the effect of Toulan-Zekpa's glasses is not material to this Court's decision.

5, Page ID 114. Upon arrival in the dairy aisle, Hauck noticed visible light pink yogurt on the grey concrete floor. Hauck Decl. ¶¶ 4-5, ECF No. 22-5, Page ID 114. Hauck spoke with Toulan-Zekpa and cleaned up the spill which was located approximately 40 feet down the aisle. Hauck Decl. ¶¶ 3, 4, 7, ECF No. 22-5, Page ID 114-115. While cleaning up the yogurt, Hauck noticed the yogurt was still wet and cool to the touch, leading her to believe the yogurt had not been on the floor for very long. Hauck Decl. ¶ 7, ECF No. 22-5, Page ID 115. Toulan-Zekpa acknowledges the yogurt was still wet at the time of her fall but does not recall whether the yogurt was cold to the touch. Toulan-Zekpa Dep., ECF 22-5, Page ID 109. Toulan-Zekpa admits she has no knowledge of how long the yogurt was on the floor. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 106.

Before cleaning the floor, Hauck photographed the yogurt and noticed only one smear in the yogurt, which appeared to have been caused by Toulan-Zekpa's fall. Hauck Decl. ¶ 6, 8, ECF No. 22-5, Page ID 114-115; Photographs, ECF No. 22-3, Page ID 90. There were no other marks in the yogurt indicating that any other shopping carts, associates, or customers had walked through the spill, and no yogurt was tracked along the aisle. Hauck Decl. ¶ 8, ECF 22-5, Page ID 115; Toulan-Zekpa Dep., ECF No. 22-4, Page ID 112. Walmart associates later found a partially opened Oikos strawberry yogurt that had been placed on the deli counter by an unknown individual. Photographs, ECF No. 22-3, Page ID 87; Hauck Decl. ¶12, ECF No. 22-5, Page ID 116. Toulan-Zekpa admits to having no personal knowledge of how the yogurt spilled on the floor.[3] Toulan-Zekpa Dep., ECF No. 22-4, Page ID 106.

---

[3] On several occasions during Toulan-Zekpa's deposition, she referenced a Walmart surveillance video. However, no video is contained in the record, Toulan-Zekpa testified in her deposition that she has

Per company policy in effect at the time of Toulan-Zekpa's fall, Walmart associates continually walked through the store aisles, including the dairy aisle, to ensure that no customer hazards existed and to address any hazards if they were present. Hauck Decl. ¶9, ECF No. 22-5, Page ID 115; Walmart Maintenance Policies, ECF No. 22-6, Page ID 118-120. In these regular "safety sweeps," associates carried towels to wipe up any spills they observed. Hauck Decl. ¶9, ECF No. 22-5, Page ID 115; Walmart Maintenance Policies, ECF No. 22-6, Page ID 118-120. Walmart maintenance associates also followed a strategic route through the store, designed to ensure that they passed by all aisles to observe and address any spills or other hazards. Hauck Decl. ¶10, ECF No. 22-5, Page ID 115; Walmart Maintenance Policies, ECF No. 22-6, Page ID 119-120.

At her deposition, Toulan-Zekpa testified that before Walmart associates came to help her and to clean up, she did not see any Walmart employees in the area where she fell. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 111. Toulan-Zekpa also testified that she did not know whether any Walmart associates observed the yogurt on the floor before her fall. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 112.

Walmart contends that Toulan-Zekpa admitted that, to her knowledge, no one else saw the yogurt prior to her fall. Def.'s Br. Supp. Summ. J. ¶ 15, ECF No. 21, Page ID 70. Toulan-Zekpa asserts that she only admitted no one saw the yogurt and attempted to warn her not to step in it. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 105-106. However, it is undisputed that no other customer reported the spill to Walmart prior to Toulan-Zekpa's fall and Hauck is unaware of any Walmart associate who observed the yogurt on

_____

not viewed a video, and no video is referenced in her Brief Opposing Walmart's Motion for Summary Judgment, ECF No. 25.

4

the dairy aisle floor prior to Toulan-Zekpa's fall. Hauck Decl. ¶ 11, ECF No. 22-5, Page ID 115.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."

*St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

Under Nebraska law,[4] a landowner must exercise reasonable care toward all lawful visitors. *Herrera v. Fleming Cos.*, 655 N.W.2d 378, 382 (Neb. 2003). In a negligence case based on premises liability "involving a slip-and-fall accident, it is incumbent upon the plaintiff to show that the accident was a result of the defendant's negligence." *Id.*

> In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.

*Edwards v. HyVee*, *Inc.*, 883 N.W.2d 40, 43 (Neb. 2016) (quoting *Hodson v. Taylor,* 860 N.W.2d 162, 174 (Neb. 2015)). Walmart argues there is no evidence to establish the first element.

## A.    Evidence Walmart created the condition that caused Toulan-Zekpa's fall

It is undisputed that Toulan-Zekpa fell after slipping on a substance, believed to be yogurt, in Walmart's dairy aisle. She argues that Walmart created the dangerous condition. In support of this argument, Toulan-Zekpa cites *Chelberg v. Guitars & Cadillacs*, 572 N.W.2d 356 (Neb. 1998). In *Chelberg*, a patron at a nightclub slipped and fell in a clear liquid located four to five feet from a trough filled with ice and bottles of beer. *Id.* at 359. Evidence established that, generally, a bartender would pull out a bottle and dry it with a towel before handing it to a customer, but sometimes customers pulled out

---

[4] The parties agree Nebraska law applies.

bottles themselves. *Id.* at 358. On the day in question, after the beer trough had closed, a patron fell in an area where a dolly was located, used by employees to transport beer from the trough to the beer cooler. *Id.* at 359. The Nebraska Supreme Court concluded that a question of fact existed as to whether the nightclub created the dangerous condition by allowing customers or employees to remove bottles without wiping them. *Id.* at 361. Thus, in *Chelberg,* the Nebraska Supreme Court reversed a grant of summary judgment on the basis that a fact-finder could determine the employees' actions created the dangerous condition. *Id.*

The facts of this case are more comparable to those in *Edwards*, where a customer slipped on what was presumed to be a piece of watermelon approximately six feet from a sample stand where a Hy-Vee employee passed out watermelon samples. 883 N.W.2d at 44. On appeal, the Nebraska Supreme Court upheld a grant of summary judgment stating there was no evidence from which a fact-finder could reasonably infer that Hy-Vee created the dangerous condition through its employees. *Id.* at 45. The court distinguished the case from *Chelberg* stating "[t]he key to potential liability in that case was the active involvement of the nightclub's employees in creating the dangerous condition." *Id.* at 44.

Here, Toulan-Zekpa has no knowledge of how the yogurt was spilled. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 106. No evidence has been presented showing that a Walmart associate spilled the yogurt or was aware of its presence before Toulan-Zekpa's fall. Walmart has presented evidence of its policies requiring regular inspections of grocery aisles and training of its employees to identify and clean up spills.[5] Hauck Decl.

---

[5] Toulan-Zekpa has not contested the existence or reasonableness of Walmart's inspection or clean-up policies, but disagrees with any inference that the policies were followed. Pl's Br. Opp'n Mot.

¶¶ 9-10, ECF No. 22-5, Page ID 115; Walmart Maintenance Policies, ECF No. 22-6, Page ID 117-120. Unlike the employees in *Chelberg* who either failed to wipe the wet beer bottles or allowed customers to take bottles without wiping them, there is no evidence to support Toulan-Zekpa's position that Walmart or its associates participated in or contributed to the spill of yogurt in the dairy department. As in *Edwards*, there is no evidence from which a fact-finder could reasonably infer that Walmart or its associates created the dangerous condition.

Citing *Wilke v. Woodhouse Ford, Inc.*, 774 N.W.2d 370 (Neb. 2009), Toulan-Zekpa also contends Walmart is not relieved of liability merely because the yogurt was likely dropped by a customer. She argues that the customer's actions were reasonably foreseeable and that an owner is liable for the intervening acts of third parties if the intervening acts are reasonably foreseeable. The court's decision in *Wilke* focused on whether intervening actions of a third party were sufficient to *break a causal connection* between the defendant's negligent conduct and the plaintiff's injury. *Id.* at 383. Unlike *Wilke*, where the alleged negligence was based on evidence that an automobile dealership failed to inspect a vehicle before sale, there is no evidence to establish any negligence on the part of Walmart. *Id.* To say an owner "created the condition through the actions of a third party would expand the definition of 'created' well beyond its plain and ordinary meaning" and the Nebraska Supreme Court has refused such expansion. *Edwards*, 883 N.W.2d at 44.

---

Summ. J., ECF No. 25, Page ID 126. Yet Toulan-Zekpa has failed to point the Court to any evidence that the policies implemented by Walmart were not followed on the day of her fall.

After Toulan-Zekpa's fall, Walmart associates found a partially opened Oikos strawberry yogurt, placed on the deli counter by an unknown individual, giving rise to a reasonable inference that a customer caused the yogurt spill. Photographs, ECF No. 22-3, Page ID 87; Hauck Decl. ¶12, ECF No. 22-5, Page ID 116. The fact that a customer may have caused the spill and that a customer spill may have been reasonably foreseeable is not evidence from which a fact-finder can reasonably infer that Walmart created the condition which caused Toulan-Zekpa's fall.

**B.    Evidence Walmart knew of the condition that caused Toulan-Zekpa's fall**

Walmart asserts Toulan-Zekpa admitted that, to her knowledge, no one else saw the yogurt prior to her fall. Def.'s Br. Supp. Summ. J. ¶ 15, ECF No. 21, Page ID 70. Toulan-Zekpa disputes this assertion, stating she only admitted that no one *both* saw the yogurt *and* attempted to warn her not to step in it. Toulan-Zekpa Dep. ECF No. 22-4, Page ID 105. Regardless, there is no evidence that any customer reported the spill to Walmart prior to Toulan-Zekpa's fall, and Hauck is unaware of any Walmart associate who observed the yogurt on the dairy aisle floor prior to Toulan-Zekpa's fall. Hauck Decl. ¶ 11, ECF No. 22-5, Page ID 115.

Toulan-Zekpa testified at her deposition that before Walmart associates came to help her and to clean the spill, she did not see any Walmart employees in the area where she fell, but she disputes that an inference should be drawn that Walmart associates were not in the area after the yogurt was spilled and before she fell. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 111; Pl.'s Br. Opp'n Mot. Summ. J. ECF No. 25, Page ID 125. Toulan-Zekpa also disputes that any inference should be drawn from her statement in her deposition that associates were "shocked" she had fallen. Pl.'s Br. Opp'n Mot. Summ. J.,

ECF No. 25., Page ID 125. Regardless, Toulan-Zekpa has presented no evidence that any Walmart associate was in the area after the yogurt was spilled and before her fall, and no fact-finder could infer that Walmart had notice of the hazardous condition before Toulan-Zekpa's fall.

## C. Evidence that by exercise of reasonable care Walmart would have discovered the condition

"Constructive knowledge is generally defined as knowledge that one using reasonable care or diligence should have." *Edwards*, 883 N.W.2d at 45. (quoting *Gaytan v. Wal-Mart*, 853 N.W.2d 181, 195-96 (Neb. 2014)). "In order for a defendant to have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it." *Id.* (quoting *Range v. Abbott Sports Complex*, 691 N.W.2d 525, 529 (Neb. 2005)). In the absence of evidence to support an inference of actual or constructive knowledge of the hazardous condition, the Nebraska Supreme Court has refused to allow juries to speculate as to the defendant's negligence. *Id.* (citing *Range*, 691 N.W.2d at 529). "Inferences based upon guess or speculation do not create material issues of fact for purposes of summary judgment." *Id.* (quoting *Range*, 691 N.W.2d at 531).

Here, Hauck was able to photograph the light pink yogurt on the grey concrete making it arguable the condition was visible and apparent. However, Toulan-Zekpa has presented no evidence that the condition existed for a sufficient length of time prior to the incident to permit Walmart associates to discover or remedy it. Although not dispositive, at the time of Toulan-Zekpa's fall there were no other marks in the yogurt indicating that

any other shopping carts, associates, or customers had walked through the spill, and no yogurt was tracked along the aisle.[6] Hauck Decl. ¶ ¶ 7-8, ECF 22-5, Page ID 115; Toulan-Zekpa Dep., ECF No. 22-4, Page ID 112.

For additional support of Walmart's contention that the condition had not existed for a sufficient length of time prior to the incident to permit Walmart associates to discover or remedy it, Walmart cites to company policies to show Walmart associates continually walked through the store aisles, including the dairy aisle, to ensure no customer hazards existed and to address any hazards if they were present. Hauck Decl. ¶ ¶ 9, 10, ECF No. 22-5, Page ID 115; Walmart Maintenance Policies, ECF No. 22-6, Page 119-120. In these regular "safety sweeps," associates carried towels with them to wipe up any spills they observed. Hauck Decl. ¶ 9, ECF No. 22-5, Page ID 115; Walmart Maintenance Policies, ECF No. 22-6, Page ID 117-118. Walmart also states that its maintenance associates followed a strategic route through the store, designed to ensure that they passed by all aisles to observe and address any spills or other hazards. Hauck Decl. ¶ 10, ECF No. 22-5, Page 115. Toulan-Zekpa does not contest the existence or sufficiency of these Walmart policies but disagrees with any inference that the policies were executed on the date in question. Pl.'s Br. Opp'n Mot. Summ. J., ECF No. 25, Page ID 126. Yet, she cites no evidence for her contention that Walmart inspection and clean-up policies were *not* followed on the day of her fall. Even without any inference that Walmart followed its safety policies on the date in question, Toulan-Zekpa has failed to point to any

---

[6] Toulan-Zekpa argues that the absence of evidence that other parties walked through the yogurt does not conclusively prove the yogurt was only on the floor for a short period of time. Yet she has presented no evidence that the yogurt spill was present for so long that Walmart would have discovered it with reasonable care.

evidence that the hazardous condition existed for a sufficient length of time prior to the incident to permit Walmart associates to discover or remedy it.

Toulan-Zekpa admits she has no knowledge of how long the yogurt was on the floor. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 106. Walmart associate, Hauck, noticed the yogurt was still wet and cool to the touch leading her to believe it had not been on the floor very long. Hauck Decl. ¶ 7, ECF No. 22-5, Page ID 115. Toulan-Zekpa acknowledges the yogurt was still wet at the time of her fall but does not recall whether it was cold to the touch and objects to the inference drawn by Hauck that it could not have been on the floor long. Toulan-Zekpa Dep., ECF No. 22-4, Page ID 109; Pl.'s Br. Opp'n Mot. Summ. J., ECF No. 25, Page ID 125. Even viewing the facts in the light most favorable to Toulan-Zekpa, rejecting the inference that the temperature of the yogurt suggested it was newly spilled, Toulan-Zekpa still failed to present any evidence that the condition persisted for a sufficient length of time prior to the incident to permit Walmart associates to discover or remedy it as is required for constructive notice.

## CONCLUSION

Walmart has satisfied its burden by showing there is an absence of evidence to support Toulan-Zekpa's claim that Walmart either created the hazardous condition that caused her injury, knew of the condition, or by exercise of reasonable care would have discovered the condition. Based on the evidence in the record, Toulan-Zekpa cannot establish the first element in a prima facie case of negligence based on premises liability.

There remain no genuine issues of material fact, and Walmart is entitled to judgment as a matter of law.[7]

Accordingly,

IT IS ORDERED:

1.      Walmart's Motion for Summary Judgment, ECF No. 20, is granted;

2.      The above-captioned action is dismissed, with prejudice;

3.      The pending Motion to Strike Plaintiff's Expert Witness Report, ECF 28, is denied as moot;

4.      The parties will bear their own costs and attorney fees; and

5.      A separate judgment will be entered.


Dated this 21st day of August, 2018.

                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        Chief United States District Judge

---

[7] Toulan-Zekpa's final argument is that this Court should apply the mode-of-operation approach to premises liability. The Nebraska Supreme Court recently examined the mode-of-operation approach and expressly declined to adopt such an approach. *Edwards*, 883 N.W.2d at 47-48. The mode-of-operation approach is not the current law in the state of Nebraska for premises liability. Therefore, this Court need not consider whether Toulan-Zekpa would prevail under the mode-of-operations approach.